Jeffrey J. Goulder (010258)
Javier Torres (0032397)
**STINSON LEONARD STREET LLP**
1850 North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4584
Tel: (602) 279-1600
Fax: (602) 240-6925
Email:  jeffrey.goulder@stinson.com
             Javier.torres@stinson.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Tisha Castillo, Karen Christian, and Steve Pratt, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>George Harry Johnson and Jane Doe Johnson, a married couple; Johnson Utilities, LLC; Johnson International, Inc.; Gary Leonard Pierce; Sherry Ann Pierce; and James Franklin Norton and Jane Doe Norton, a married couple,<br><br>Defendants. | No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs Tisha Castillo, Karen Christian, and Steve Pratt ("Plaintiffs"), for themselves and for others similarly situated, by and through their attorneys, bring this claim as a class action pursuant to Fed. R. Civ. P. 23 *et seq.* against George Harry Johnson ("Johnson") and Jane Doe Johnson; Johnson Utilities, LLC ("Johnson Utilities"); Johnson International, Inc. ("Johnson International"); Gary Leonard Pierce ("Gary Pierce"); Sherry Ann Pierce ("Sherry Pierce"); James Franklin Norton ("Norton") and Jane Doe Norton, (collectively "Defendants"), and in support thereof, upon personal knowledge as to themselves, and upon information and belief as to all other matters, allege the following:

CORE/3503617.0002/136473978.1

## I. NATURE OF THE ACTION.

1. This is a class action arising from a scheme in which Defendants operated an association-in-fact racketeering enterprise to unlawfully overcharge customers for water and wastewater services. As set forth in a recent federal indictment (attached to this Complaint as Exhibit 1), a utility's owner, using a lobbyist and consultant as a conduit, bribed a state regulator and his wife to corruptly charge the public excessive prices. The purpose of this action is to obtain compensation for the utility's customers who overpaid as a result of this illegal scheme.

## II. JURISDICTION AND VENUE.

2. This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1964(a) for the federal Civil RICO claims, and Supplemental Jurisdiction over all state-law claims, under 28 U.S.C. § 1367(a).

3. Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because Defendants are all subject to personal jurisdiction in this judicial district and reside in this district.

## III. PARTIES.

4. Plaintiff Tisha Castillo is an individual residing in Pinal County, Arizona.

5. Plaintiff Karen Christian is an individual residing in Pinal County, Arizona.

6. Plaintiff Steve Pratt is an individual residing in Pinal County, Arizona.

7. Plaintiffs paid water and/or wastewater charges that were inflated by the corrupt activities of Defendants, as described herein.

8. Defendant George Harry Johnson is the owner of Johnson Utilities, LLC.

9. Upon information and belief, George Harry Johnson and Jane Doe Johnson are husband and wife, and are citizens of Arizona. All of the acts referenced in this Complaint were performed in furtherance of, and for the benefit of, the Johnsons' marital community.

10. Defendant Johnson Utilities, LLC is an Arizona limited liability company headquartered in Scottsdale, Arizona. Johnson Utilities provides water and wastewater services in Pinal County, Arizona. Johnson Utilities is subject to regulation by the Arizona Corporation Commission ("ACC").

11. Defendant Johnson International, Inc., is a Scottsdale-based real estate development company owned by George Harry Johnson.

12. Defendant Gary Leonard Pierce is a former commissioner on the ACC. He was elected commissioner in 2007, and commission chairman in 2012.

13. Defendant Sherry Ann Pierce is the wife of Gary Pierce.

14. Defendant James Franklin Norton is a lobbyist formerly employed by R&R Partners, a firm that was retained by Johnson Utilities and George Johnson to lobby on their behalves before the ACC and other entities.

15. Upon information and belief, James Franklin Norton and Jane Doe Norton are husband and wife, and are citizens of Arizona. All of the acts referenced in this Complaint were performed in furtherance of, and for the benefit of, the Nortons' marital community.

**IV.   FACTUAL ALLEGATIONS.**

16. Arizona utilities are regulated by the ACC. The ACC, comprised of five elected commissioners, makes final decisions on matters such as rate adjustments for utilities.

17. Gary Pierce served on the ACC from 2007 to 2014, including as chairman.

18. On August 24, 2010, the ACC, unanimously and on the advice of its staff, rejected Johnson's request for: (1) a wastewater rate increase and (2) to allow Johnson to have his personal income taxes reimbursed by payments made by Johnson Utilities customers.

19. However, on August 11, 2011, Gary Pierce introduced an amendment to the August 24, 2010 decision. Gary Pierce's proposed amendment granted Johnson's requested rate increase and added language to the earlier decision expressly stating that Johnson Utilities could request income tax reimbursement if the ACC changed its policy regarding pass-through entities such as the Johnson Utilities' limited liability company.

20. On September 6, 2011, Gary Pierce and a majority of the ACC voted – against ACC staff recommendations – to approve the amendment and grant Johnson the requested rate increase and ability to request income tax reimbursement in the future.

21. On September 28, 2011, Gary Pierce, Sherry Pierce, Norton and a person whose identity is currently unknown, (hereinafter the "Co-Conspirator") met for dinner. At that dinner, the Co-Conspirator stated that Sherry Pierce would become an employee of his consulting firm. Additionally, the Co-Conspirator stated that a confidentiality agreement would be created to prevent Sherry Pierce from disclosing the nature of her work for the consulting firm.

22. On November 9, 2011, Sherry Pierce signed an "Independent Contractor Agreement" with the consulting firm, as well as a confidentiality agreement.

23. On November 9, 2011, Johnson signed a check drawn on an account held by Johnson International for $6,000 and made payable to the consulting firm.

24. On November 10, 2011, Johnson and Norton met with the Co-Conspirator, and Johnson gave him the $6,000 check.

25. On November 10, 2011, the Co-Conspirator opened a checking account in the name of his consulting firm.

26. On November 18, 2011, Gary Pierce and Sherry Pierce accepted a check drawn on the consulting firm's account for $3,500. The original source of that money was Johnson. Sherry Pierce endorsed the check and deposited it into an account she shared with Gary Pierce.

27. On December 8, 2011, Johnson signed another $6,000 check from the Johnson International account made out to the consulting firm.

28. On December 12, 2011, Sherry Pierce sent an invoice via email to the Co-Conspirator labeled: "December Consulting Services as per Contract: $3,500.00."

29. On December 19, 2011, Gary Pierce and Sherry Pierce accepted a check drawn on the consulting firm's account for $3,500. The original source of that money was Johnson. Sherry Pierce endorsed the check and deposited it into an account she shared with Gary Pierce.

30. On January 13, 2012, Johnson signed a check for $6,097.99 from the Johnson International account made out to the consulting firm.

31. On January 31, 2012, Gary Pierce and Sherry Pierce accepted a check drawn on the consulting firm's account for $3,500. The original source of that money was Johnson. Sherry Pierce endorsed the check and deposited it into an account she shared with Gary Pierce.

32. On February 9, 2012, Johnson signed a check for $7,084.80 from the Johnson International account made out to the consulting firm.

33. On February 21, 2012, Gary Pierce and Sherry Pierce accepted a check drawn on the consulting firm's account for $3,500. The original source of that money was Johnson. Sherry Pierce endorsed the check and deposited it into an account she shared with Gary Pierce.

34. On March 20, 2012, Johnson signed a check for $6,028.23 from the Johnson International account made out to the consulting firm.

35. On April 6, 2012, Gary Pierce and Sherry Pierce accepted a check drawn on the consulting firm's account for $3,500. The original source of that money was Johnson. Sherry Pierce endorsed the check and deposited it into an account she shared with Gary Pierce.

36. On April 11, 2012, Johnson signed a check for $6,069.53 from the Johnson International account made out to the consulting firm.

37. On May 1, 2012, Johnson signed a check for $6,029.79 from the Johnson International account made out to the consulting firm.

38. On May 16, 2012, Gary Pierce and Sherry Pierce accepted a check drawn on the consulting firm's account for $3,500. The original source of that money was Johnson. Sherry Pierce endorsed the check and deposited it into an account she shared with Gary Pierce.

39. On June 5, 2012, Johnson signed a check for $6,144.56 from the Johnson International account made out to the consulting firm.

40. On June 11, 2012, Gary Pierce and Sherry Pierce accepted a check drawn on the consulting firm's account for $3,500. The original source of that money was Johnson. Sherry Pierce endorsed the check and deposited it into an account she shared with Gary Pierce.

41. On June 15, 2012 Gary Pierce filed a document titled "Policy Statement on Income Tax Expense for Tax Pass-Through Entities" on the ACC docket.

42. On July 11, 2012, Gary Pierce and Sherry Pierce accepted a check drawn on the consulting firm's account for $3,500. The original source of that money was Johnson. Sherry Pierce endorsed the check and deposited it into an account she shared with Gary Pierce.

43. On July 31, 2012, the Co-Conspirator sent an email to Sherry Pierce stating that the firm's contract work for clients would be limited as of August 1, 2012.

44. On July 31, 2012, Sherry Pierce sent an email to the Co-Conspirator acknowledging the end of payments from Johnson and stating: "I've really enjoyed working with and getting to know you better. Gary told me about his conversation about this with Jim so I was already aware."

45. On August 3, 2012, Johnson signed a check for $6,027.48 from the Johnson International account made out to the consulting firm.

46. On August 9, 2012, the Co-Conspirator sent an email to Sherry Pierce stating: "Just got my final check in the mail while I was in Tucson so will get a check out to you tomorrow."

47. On August 13, 2012, Gary Pierce and Sherry Pierce accepted a check drawn on the consulting firm's account for $3,500. The original source of that money was Johnson. Sherry Pierce endorsed the check and deposited it into an account she shared with Gary Pierce.

48. On February 12, 2013, Gary Pierce voted to allow the owners of pass-through utility entities such as Johnson Utilities to recover their personal income taxes from utility customers.

## V. CLASS ACTION ALLEGATIONS.

49. Plaintiffs bring this action individually and as a class action pursuant to Fed. R. Civ. P. 23 *et seq.* for the following Class:

> All Johnson Utilities customers who paid for water and/or wastewater services between January 1, 2011 and the date judgment is entered in this lawsuit.

Excluded from the Class are legal representatives, attorneys, heirs, and assigns of Defendants; any judge, justice or judicial officer presiding over this matter and the members of their immediate families and judicial staffs.

50. **Numerosity**. There are believed to be tens of thousands members of the Class. Accordingly, the members of the Class are so numerous that their individual joinder would be impracticable.

51. **Commonality**. There are numerous questions of law and fact that are common to Plaintiffs and all members of the Class, including, but not limited to the following:

a) Whether Defendants engaged in an pattern of racketeering activity that resulted in Johnson Utilities customers being charged unlawfully higher prices for water and wastewater services;

b) Whether Defendants committed consumer fraud;

c) Whether Defendants have been unjustly enriched;

d) Whether Plaintiffs and the Class have suffered damages; and

e) Whether Plaintiffs and members of the Class are entitled to equitable relief.

52. **Typicality**. Plaintiffs are members of the Class and have claims that are typical of all members of the Class. Plaintiffs' claims and all of the Class members' claims arise out of the same uniform course of unlawful conduct by Defendants and may be remedied under the same legal theory – that customers were subjected to and paid charges that were corruptly increased by Defendants' unlawful actions.

53. **Adequacy**. Plaintiffs will fairly and adequately represent the interests of the members of the Class. Plaintiffs have no conflicts of interest with, or interests that are any different from, those of the other class members. Plaintiffs have retained competent counsel experienced in class action and other complex litigation.

54. **Predominance**. Common questions of law and fact predominate over questions affecting only individual Class members. More specifically, the corruption of rate charges presents common issues of law and fact; the only individual issues being the arithmetic calculation of individual customers' shares of the corruptly increased rates charged.

55. **Superiority**. A class action is superior to all other feasible alternatives for the resolution of this matter. Individual litigation of multiple cases would be highly inefficient, a gross waste of the resources of the court and of the parties, and potentially could lead to inconsistent results that would be contrary to the interests of justice.

56. **Manageability**. This case is well suited for treatment as a class action and can easily be managed as a class action because evidence of both liability and damages can be adduced, and proof of liability and damages can be presented, on a class-wide basis, while the allocation and distribution of damages to Class members would be essentially a ministerial function.

57. Defendants have acted on grounds generally applicable to Plaintiffs and Class members by uniformly overcharging them for water and wastewater services. Accordingly, injunctive relief, as well as legal and/or equitable monetary relief (such as disgorgement and/or restitution), along with corresponding declaratory relief, are appropriate with respect to the Class as a whole.

## VI. CAUSES OF ACTION.

### COUNT I
### Civil RICO
### Violation of 18 U.S.C. § 1962(c)

58. Plaintiffs incorporate the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

59. Under RICO, "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

60. Under 18 U.S.C. § 1964(c), anyone who is injured in his business or property by an act that qualifies as a RICO violation is permitted to bring suit in any federal district court and may recover three times the damages sustained as well as the cost of the suit including reasonable attorney's fees.

61. As required for an actionable violation of 18 U.S.C. § 1962(c), these allegations assert, for Plaintiffs and all Class members, claims showing:

    1) A culpable person;

    2) Who conducts the business of, or acquires an "enterprise;"

    3)      Affecting interstate commerce;

    4)      Through a pattern;

    5)      Of racketeering activity (the "predicate acts");

    6)      Causing injury to Plaintiff's business or property.

62. **Culpable Person**. RICO defines a "person" as an "entity capable of holding a legal or beneficial interest in property." Here, Johnson is a culpable "person" within the meaning of 18 U.S.C. § 1961(3) because he is capable of holding a beneficial interest in property. Indeed, all of the Defendants are culpable "persons" under RICO.

63. **Enterprise**. RICO defines an enterprise as "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." The enterprise in this case is an association in fact. That is, the Defendants associated in fact to create a "Johnson Utilities Enterprise," which is not a legal entity. The Defendants came together to create the association-in-fact Johnson Utilities Enterprise for a common purpose of engaging in a course of conduct. That course of conduct was to unlawfully raise utility rates in order to enrich the Defendants. Johnson conducted the business of the enterprise, and in conjunction with the other Defendants operated the enterprise to charge customers unlawfully inflated prices. The Johnson Utilities Enterprise had an ongoing organization, either formal or informal. The organization was this: Johnson and Johnson International paid bribes through Norton to Sherry Pierce and Gary Pierce who ensured via his position on the ACC that Johnson Utilities could unlawfully charge customers higher rates. The Defendants comprising the association-in-fact Johnson Utilities Enterprise functioned as a continuing unit. The unit operated continuously for 10 months, with Johnson and Johnson International sending monthly bribe payments through Norton to Sherry Pierce and Gary Pierce who ensured via his position on the ACC that Johnson Utilities could unlawfully charge customers higher rates.

64.     Defendants conducted and participated directly or indirectly in the conduct of the association-in-fact Johnson Utilities Enterprise through a pattern of racketeering activity. That is, Defendants used mail fraud and wire fraud to operate the enterprise and effectuate Johnson's goal of charging his customers higher prices for water and wastewater services.

65.     **Interstate or Foreign Commerce**. The interstate commerce requirement is satisfied if either the activity of the enterprise or the predicate acts of racketeering affect interstate commerce. Here, both the activities of Johnson Utilities and predicate acts of racketeering affect interstate commerce. The Johnson Utilities Enterprise affects interstate commerce by using the interstate mail system to charge and collect unlawfully inflated prices for water and wastewater services and by using the interstate wire system to deposit money from water/wastewater customers who paid unlawfully inflated prices. Additionally, the predicate acts affect interstate commerce because the interstate mail system was used to send and receive bribery checks, and the interstate wire system was used to fund and deposit bribery checks.

66.     **Pattern of Racketeering**. RICO defines a "pattern of racketeering" as "at least two acts of racketeering activity…the last of which occurred within 10 years after the commission of a prior act of racketeering." 18 U.S.C. § 1961(5). Here, numerous acts of racketeering activity took place between 2011 and 2013.

67.     **Racketeering Activity**. "Racketeering activity" is defined as any number of state and federal offenses enumerated in 18 U.S.C. § 1961(1). In the instant case, Defendants engaged in racketeering activity through violations of federal offenses relating to mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343.

68.     The elements of mail fraud are (1) a plan or scheme to defraud (2) intent to defraud, (3) reasonable foreseeability that the mails will be used, and (4) actual use of the mails to further the scheme. In the instant case, Defendants knowingly and with intent devised a scheme to defraud Johnson Utilities' customers by bribing Gary Pierce

in exchange for his official action allowing Johnson Utilities to charge unlawfully higher prices for water and wastewater services.  It was reasonably foreseeable that as part of this scheme, Defendants would use the mails to send bribery checks.  Indeed, on multiple occasions in 2011 and 2012, Defendants placed and caused to be placed in the mails checks that were sent from Johnson to the Co-Conspirator and then on to Gary and Sherry Pierce.

69.   The elements of wire fraud are (1) a plan or scheme to defraud (2) intent to defraud, (3) reasonable foreseeability that the wires will be used, and (4) actual use of the wires to further the scheme.  In the instant case, Defendants knowingly and with intent devised a scheme to defraud Johnson Utilities' customers by bribing Gary Pierce in exchange for his official action at the ACC allowing Johnson Utilities to charge unlawfully higher prices for water and wastewater services.  It was reasonably foreseeable that as part of this scheme, Defendants would use the interstate wires to settle funds transfers and for email communications.  Indeed, on multiple occasions in 2011 and 2012, Defendants used and caused to be used the wires to settle fund transfers from checks from Johnson to the Co-Conspirator and from the Co-Conspirator to Gary and Sherry Pierce.  Additionally, Sherry Pierce and the Co-Conspirator communicated via email in furtherance of the scheme to defraud.

70.   Moreover, since Plaintiffs and members of the Class paid their bills to Johnson Utilities, virtually all by checks submitted by mail or ACH or credit card charge payments, the United States Postal system and the interstate wire systems were the primary vehicles by which the proceeds of the corruptly increased rate charges were collected.  Each such payment constitutes an event of mail fraud (18 U.S.C. § 1341) or wire fraud (18 U.S.C. § 1343).

71.   **Injury**.  To establish standing under RICO, a plaintiff must be (1) a person; (2) who sustains injury (3) to his or her business or property" (4) "by reason" of defendants' violation of Section 1962.  Here, Plaintiffs are persons under RICO who

sustained injury to their property by reason of Defendants' unlawful racketeering. That is, Plaintiffs and the Class would not have paid extra money for water and wastewater services but for Defendants' mail fraud and wire fraud.

72.     As a direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs and the Class have been actionably injured in their business and property, and are entitled to recover their damages, and trebled, plus reasonable attorneys' fees and costs, pursuant to 18 U.S.C.§1964(c).

## COUNT II
### Arizona Anti-Racketeering Act
### Violation of Ariz. Rev. Stat. § 13-2314

73.     Plaintiffs incorporate the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

74.     More specifically, Plaintiffs repeat and re-allege this Complaint's allegations of ¶¶ 55-69, substituting therein the phrase "pattern of illegal activity" for the phrase "pattern of racketeering activity."

75.     Plaintiffs and each Defendant is a "person" within the meaning of Ariz. Rev. Stat. § 13-1214.04.

76.     The allegations of ¶¶ 55-69, as modified by this Count II, constitute a pattern of illegal activity by Defendants as defined in Ariz. Rev. Stat. §§ 13-2301(D)(4), 13-2301(D)(4)(b)(vi) and 13-2301(D)(4)(b)(xx) because it involved at least two "acts chargeable or indictable" under the laws of the United States, including multiple acts of bribery, mail fraud and wire fraud which were part of the above-described "bribery" and "scheme or artifice to defraud" Plaintiffs for Defendants' personal financial gain.

77.     Plaintiffs and members of the Class have sustained reasonably foreseeable injury to their business or property on account of the foregoing pattern of illegal activity by the conduct of Defendants alleged herein.

78.     Ariz. Rev. Stat. § 13-23143.04 entitles Plaintiffs to file the instant claim for relief.

## COUNT III
### Arizona Consumer Fraud Act
### Violation of Ariz. Rev. Stat. § 44-1522

79.     Plaintiffs incorporate the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

80.     At all relevant times, there was in full force and effect the Arizona Consumer Fraud and Deceptive Business Practices Act, Ariz. Rev. Stat. § 441-1521 et. seq.

81.     The Act provides:

> The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

Ariz. Rev. Stat. § 44-1522.

82.     Defendants made misrepresentations and material omissions, and concealed and suppressed their unlawful conduct, in connection with Johnson Utilities' sale of water and wastewater services to Plaintiffs and members of the Class.

83.     More specifically, Defendant Johnson did not inform his customers that the rate increase and his ability to pass on his income-tax liability to customers was achieved as a result of bribery.  Nor did Defendant Gary Pierce inform Johnson Utilities customers that the rate increase and the tax pass-through he approved were the result of bribery.  Defendants Sherry Pierce and Norton concealed and suppressed their knowledge that Johnson achieved the rate increase and the tax benefits by bribery.

84. As a direct and proximate result of Johnson's and Pierce's misrepresentations and material omissions, Plaintiffs and members of the Class overpaid for water and wastewater services.

### COUNT IV
### Unjust Enrichment

85. Plaintiffs incorporate the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

86. As described above, Defendant Johnson received benefits in the form of an unlawful rate increase and tax benefits. Defendants Gary Pierce, Sherry Pierce and Norton have received benefits in the form of payments from Johnson in return for enabling the scheme to unlawfully increase water rates and provide tax benefits for Johnson.

87. Plaintiffs and the Class conferred a benefit upon Defendants by paying unlawfully inflated bills for water and/or wastewater services.

88. The benefits received by Defendants were received at the expense of Plaintiffs and members of the Class.

89. Because the scheme perpetrated by Defendants to increase water rates and offset Johnson's income taxes was unlawful, it would be unjust to allow Defendants to retain the benefits conferred upon them by Plaintiffs and the Class.

**VII.  JURY DEMAND.**

90. Plaintiffs and members of the Class request a jury trial.

**VIII.  PRAYER FOR RELIEF**

91. Plaintiffs, on behalf of themselves and members of the Class, respectfully request that this Court:

    a) Certify the Class as requested herein, appoint Plaintiffs as Class Representatives and their selection of counsel as Class Counsel, and order class-wide relief;

b) Adjudge and decree that Defendants have engaged in the conduct alleged herein;

c) Enjoin and restrain Defendants and its officers and agents from continuing or engaging in similar conduct as alleged herein;

d) Order that Defendants pay restitution to Plaintiffs and the Class which would restore Plaintiffs and the Class to the financial position they would have been in absent Defendant's unlawful conduct;

e) Order that Defendants pay any statutory damages – including treble damages pursuant to 18 U.S.C. § 1964 – as a result of their unlawful conduct;

f) Order that Defendants pay any compensatory damages as a result of their unlawful conduct;

g) Order that Defendants pay punitive damages as a result of their unlawful conduct;

h) Order that Defendants pay interest on the monies wrongfully obtained from the date of collection through the date of entry of judgment in this action;

i) Order Defendants to identify victims of its unlawful conduct;

j) Order that Defendants are financially responsible for notifying all members of the Class of the unlawful conduct set forth herein;

k) Award attorneys' fees, expenses, and all costs reasonably incurred in connection with the commencement and prosecution of this action; and

l) Grant all other such relief as the Court deems necessary and proper.

RESPECTFULLY SUBMITTED 18th day of December 2017.

**STINSON LEONARD STREET LLP**

By: /s/ *Jeffrey J. Goulder*
Jeffrey J. Goulder
Javier Torres
1850 North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4584
(602) 279-1600
Attorneys for Plaintiffs